UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80050-CR-CANNON/REINHART

UNITED STATES OF AMERICA

vs.

MONFORT DESIR,

                Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and MONFORT DESIR (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to Counts 1-5, as charged in the Indictment, that is, Distribution of a Controlled Substance, in violation of Title 21, United States Code Sections 841(a)(1) and (b)(1)(C). The defendant agrees that he is, in fact, guilty of the offenses.

2. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is

required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offense identified in paragraph 1 and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

3. The defendant also understands and acknowledges that as to Counts 1-5 of the Indictment, the Court may impose a term of up to twenty (20) years' imprisonment, followed by a minimum term of three (3) years and up to a maximum term of life of supervised release. In addition to a term of imprisonment and supervised release, the Court may impose a fine of up to $1,000,000.00.

4. The defendant further understands and acknowledges that, in addition to any sentence imposed under paragraph 3 of this agreement, a special assessment in the amount of $500.00 will be imposed. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

5. This Office and the defendant reserve the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing

recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

6. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offenses, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; or (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official.

7. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office

makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

8. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of a violation of 21 U.S.C. § 841 and any property used or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation, pursuant to 21 U.S.C. § 853. In addition, the defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p).

9. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

10. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offense of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the

United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

11. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 6/30/2023         By: *[signature]*
                             SHANNON O'SHEA DARSCH
                             ASSISTANT UNITED STATES ATTORNEY

Date: 6/30/23           By: *[signature]*
                             ROBERT ADLER
                             ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 6/30/23           By: *[signature]*
                             MONFORT DESIR
                             DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-80050-CR-CANNON/REINHART

UNITED STATES OF AMERICA

vs.

MONFORT DESIR,

              **Defendant.**

_____/

## FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

The United States of America and Defendant MONFORT DESIR (hereinafter "Defendant") agree that had this case proceeded to trial, the United States would have proven the following elements and facts beyond a reasonable doubt as to Counts 1-5 of the Indictment, charging the Defendant with Distribution of a Controlled Substance (Counts 1-5), in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C).

### Elements of Counts 1-5

**First**: Defendant knowingly possessed a substance;

**Second**: Defendant intended to distribute the substance, and

**Third**: The substance was a Schedule II controlled substance as contained in the Indictment, that is, a mixture and substance containing a detectable amount of fentanyl.

1. Law enforcement searched a decedent's phone relating to an overdose death and identified a phone number related to narcotic sales. An undercover officer ("UC") thereafter contacted Defendant and asked him for narcotics.

2. On February 23, 2022, the UC exchanged recorded text messages with Defendant and requested six "HATS." Defendant told the UC to meet him at a location in Lake Worth, Florida. At the location, the UC entered Defendant's vehicle, where he handed the UC six capsules. In

exchange, the UC gave Defendant $120.00. Subsequently, Defendant gave the UC an additional capsule for making the UC wait. The transaction was audio recorded, capturing the UC stating, "six and an extra one for waiting," and Defendant responding, "yeah." Defendant also states: "But, I usually do six though" and "120?"

3. Testing of the seven capsules by the Palm Beach County Sheriff's Office ("PBSO") Crime Laboratory confirmed the suspected fentanyl was fentanyl, which weighed approximately 1.036 grams. Xylazine and para-fluorofentanyl were also identified. Xylazine is not approved for human use. It is a non-opioid sedative that can cause amputation of limbs and Narcan is ineffective in the event of an overdose. It is used in veterinary medicine as a sedative. It is not controlled under the Controlled Substances Act.

4. On March 1, 2022, the UC exchanged recorded text messages with Defendant to negotiate the purchase of fentanyl. Defendant told the UC to meet him at a different location in Lake Worth, Florida. Thereafter, the UC arrived at the meeting location and entered Defendant's vehicle. Defendant gave the UC a plastic bag with fifteen capsules of a powdery substance in exchange for $180.00. The recording clearly captures Defendant and an exchange of narcotics for money. The recording also captures Defendant stating, "I gave you fifteen."

5. Testing of the fifteen capsules by the PBSO Crime Laboratory confirmed the suspected fentanyl was fentanyl, which weighed approximately 2.436 grams. Tramadol, xylazine, heroin, and para-flourofentanyl were also identified.

6. On March 8, 2022, the UC sent text messages to Defendant to purchase fentanyl. The UC informed Defendant in a recorded text that she had "200." Defendant told the UC to meet at the same location as the prior buy in Lake Worth, Florida. The UC met Defendant at the location and got into his vehicle. Defendant told the UC he did not have the amount requested, but he had

$100.000 worth of narcotics. Defendant then sold the UC five capsules of a powdery substance in exchange for $100.00. The recording clearly captures Defendant, narcotics, and cash.

7. Testing of the five capsules by the PBSO Crime Laboratory confirmed the suspected fentanyl was fentanyl, which weighed approximately .644 grams. Xylazine and para-flourofentanyl were also identified.

8. On March 25, 2022, the UC sent recorded text messages to Defendant to negotiate the purchase of $200.00 worth of fentanyl. Thereafter, Defendant and the UC met at a different location in Lake Worth, Florida. At the location, the UC entered Defendant's vehicle. Defendant provided the UC with a bag containing twelve capsules of a powdery substance, in exchange for $200.00. The video recording captures Defendant stating, "twelve" in response to the UC stating, "for $200.00." Testing of the twelve capsules by the PBSO Crime Laboratory confirmed the suspected fentanyl was fentanyl, which weighed approximately 2.002 grams. Heroin, para-fluorofentanyl, xylazine, and tramadol were also identified.

9. On August 25, 2022, the UC exchanged recorded text messages with Defendant to purchase $300.00 worth of fentanyl. Thereafter, Defendant and the UC met at a prearranged location in Lake Park, Florida. At the location, Defendant entered the UC's vehicle. Defendant provided the UC with eighteen capsules of a powdery substance in exchange for $300.00. The video recording captures Defendant stating, "eighteen" and "bless you," in response to the UC stating she had "$300." The recording also captures the UC's cash and the UC telling Defendant where to put the capsules.

10. Testing of the eighteen capsules by the DEA Lab confirmed the suspected fentanyl was fentanyl, which weighed approximately 2.92 grams. Heroin, tramadol, xylazine, and para-flurofentanyl were also identified.

3

11. All events having occurred in the Southern District of Florida and elsewhere.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 6/30/2023

By: *[signature]*
SHANNON O'SHEA DARSCH
ASSISTANT UNITED STATES ATTORNEY

Date: 6/30/23

By: *[signature]*
ROBERT ADLER
ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 6/30/23

By: *[signature]*
MONFORT DESIR
DEFENDANT

4